IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRUISE CONTROL TECHNOLOGIES LLC,<br><br>      Plaintiff,<br>v.<br><br>CHRYSLER GROUP LLC,<br><br>      Defendant. | Civil Action No. 12-1755-GMS |
| CRUISE CONTROL TECHNOLOGIES LLC,<br><br>      Plaintiff,<br>v.<br><br>FORD MOTOR COMPANY,<br><br>      Defendant. | Civil Action No. 12-1756-GMS |
| CRUISE CONTROL TECHNOLOGIES LLC,<br><br>      Plaintiff,<br>v.<br><br>GENERAL MOTORS LLC,<br><br>      Defendant. | Civil Action No. 12-1757-GMS |
| CRUISE CONTROL TECHNOLOGIES LLC,<br><br>      Plaintiff,<br>v.<br><br>JAGUAR LAND ROVER NORTH AMERICA LLC,<br><br>      Defendant. | Civil Action No. 12-1758-GMS |

| | |
|---|---|
| CRUISE CONTROL TECHNOLOGIES LLC, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>SUBARU OF AMERICA, INC., )<br>)<br>Defendant. )<br>) | Civil Action No. 12-1761-GMS |
| CRUISE CONTROL TECHNOLOGIES LLC, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>VOLVO CARS OF NORTH AMERICA, INC., )<br>)<br>Defendant. )<br>) | Civil Action No. 12-1762-GMS |
| CRUISE CONTROL TECHNOLOGIES LLC, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>NISSAN NORTH AMERICA, INC., )<br>)<br>Defendant. )<br>) | Civil Action No. 13-0085-GMS |
| CRUISE CONTROL TECHNOLOGIES LLC, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>TOYOTA MOTOR NORTH AMERICA, INC., )<br>)<br>Defendant. )<br>) | Civil Action No. 13-0086-GMS |
| CRUISE CONTROL TECHNOLOGIES LLC, )<br>) | |

2

|                                          |   |                              |
|------------------------------------------|---|------------------------------|
| Plaintiff,                               | ) |                              |
| v.                                       | ) | Civil Action No. 13-0087-GMS |
|                                          | ) |                              |
| VOLKSWAGEN GROUP OF AMERICA, INC.,       | ) |                              |
|                                          | ) |                              |
| Defendant.                               | ) |                              |
|                                          | ) |                              |

## MEMORANDUM

### I.   INTRODUCTION

On December 21, 2012, the plaintiff Cruise Control Technologies, LLC ("Cruise Control") initiated the instant actions each of the above-captioned Defendants ("the Defendants"). (D.I. 1 in 12-1755, 12-1756, 12-1757, 12-1758, 12-1761, 12-1762, 13-0085, 13-0086, and 13-0087.) In each of its complaints, Cruise Control alleged that the Defendants infringed U.S. Patent No. 6,324,463 ("the '463 patent" or "the patent-in-suit") by, among other things, making, using, and selling vehicular cruise control products that include a "cruise control system for a vehicle having a human operator." (*Id.*)

Presently before this court are the Defendants' Motions to Transfer each action to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(A). (D.I. 15 in 12-1755; D.I. 15 in 12-1756; D.I. 18 in 12-1757; D.I. 14 in 12-1758; D.I. 17 in 12-1761; D.I. 14 in 12-1762; D.I. 14 in 13-0085; D.I. 14 in 13-0086; D.I. 19 in 13-0087.[1]) For the reasons that follow, the court will grant

---

[1]   In three other related cases, the Defendants have filed statements indicating consent to transfer. (*See* "Mercedes Benz USA, LLC's Statement of Non-Opposition to Transfer to the Eastern District of Michigan", D.I. 14 in 12-1759; "Porsche Cars North America, Inc.'s Statement of Non-Opposition to Transfer to the Eastern District of Michigan", D.I. 18 in 12-1760; "Notice of Defendant Hyundai Motor America's Consent to Transfer to the Eastern District of Michigan", D.I. 16 in 13-0084.) Thus, in all of the cases except one, the Defendants have either moved to transfer venue to the Eastern District of Michigan or have filed statements consenting to such transfer. Only in one of the related cases has the Defendant hitherto been silent regarding its amenability to transfer to the Eastern District of Michigan. America Honda Motor Co., Inc. has yet to take a position on transfer in the nearly one year since the other Defendants began filing motions to transfer and statements of non-opposition to transfer. (*See* 13-0082.).

the Motions to Transfer.

## II. BACKGROUND

Cruise Control is a Delaware limited liability company that is the owner by assignment of the '463 patent. (D.I. 1 at ¶¶ 3, 8.) Cruise Control has not disclosed any information about whether it has a principal place of business, and if so, where this is located. (*Id.*) According to the Defendants, Cruise Control incorporated in Delaware just four days prior to filing suit against them. (*See, e.g.*, D.I. 16 in 12-1755.) The Defendants also allege, and Cruise Control does not deny, that Cruise Control has no offices or factories and does not transact any business at all, except to bring patent infringement suits. (*Id.*; D.I. 18 in 12-1755.)

All of the nine Defendants are car companies. Of the nine, six of them are incorporated in Delaware, while three of them are incorporated in states ranging from California to New York to New Jersey. All of the Defendants maintain either their headquarters or their research and development facilities in the Eastern District of Michigan. Specifically, Ford Motor Company ("Ford"), Chrysler Group LLC ("Chrysler"), General Motors LLC ("GM") are all incorporated in Delaware, but have their headquarters in the Eastern District of Michigan. (D.I. 16 in 12-1755 at 3.) Jaguar Land Rover North America, LLC ("Jaguar"), Volvo Cars of North America, LLC ("Volvo"), and Subaru of America, Inc. ("Subaru") are also all incorporated in Delaware, but all three have their principal places of business in New Jersey. (D.I. 1 in 12-1761 at ¶ 4; D.I. 16 at Ex. 3 & 4 in 12-1758.) Nissan North America, Inc. ("Nissan") is incorporated in California and has its principal research and development center in the Eastern District of Michigan. (D.I. 14 at 2 in 13-0085.) Toyota Motor North America, Inc. ("Toyota") is incorporated in New York with its principal place of business in New York, but maintains its principal engineering division in the

Eastern District of Michigan. (D.I. 14 at 2 in 13-0086.) Volkswagen Group of America, Inc. ("Volkswagen") is incorporated in New Jersey with its technical operations located in the Eastern District of Michigan. (D.I. 20 at 2-3 and D.I. 22 at 3 in 13-0087.)

### III. STANDARD OF REVIEW

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Consistent with relevant case law, the court employs a two-step inquiry in order to resolve a motion to transfer. *See, e.g., Smart Audio Techs., L.L.C. v. Apple, Inc.,* 910 F. Supp. 2d 718, 724 (D. Del. 2012). The court first determines "whether the action could have been brought in the proposed transferee venue". *Id.*; *L'Athene, Inc. v. Earthspring LLC,* 570 F. Supp. 2d 588, 591 (D. Del. 2008). Under 28 U.S.C. § 1391(b)(2), venue is appropriate in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." The purpose of substantiality is "preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cottman Transm'n Sys. v. Martino,* 36 F.3d 291, 294 (3d. Cir. 1994). Thus, due to the substantiality requirement, "[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough[]" to establish that venue is proper in a particular jurisdiction. *Id.* at 294.

After determining whether the action could have been brought in the proposed transferee venue, the court then decides "whether transfer to a different forum would best serve the interests of justice and convenience." *Smart Audio,* 910 F. Supp. 2d at 724. In order to decide whether transfer would serve the interests of justice and convenience, the Third Circuit has instructed

district courts to look to the various private and public interests protected by Section 1404(a) rather than to any "definitive formula." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The private interests may include:

> [P]laintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted). The public interests, in turn, may include:

> [T]he enforceability of the judgment: practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citations omitted). Unless the balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

## IV.   DISCUSSION

Since all of the Defendants contend that venue would be proper in the Eastern District of Michigan by virtue of their headquarters and/or research and development facilities being located there, and Cruise Control does not contest this regarding any of the Defendants, the court proceeds to weigh the *Jumara* factors.

### A.   Private Interest Factors

#### 1.   Parties' Forum Choice

The court begins with the private interest factors. Regarding the parties' forum choice, it is well established that "in ruling on a defendants' motion, the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879; *see also Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request....") Cruise Control is incorporated in Delaware, (*See, e.g.*, D.I. 1 in 12-1755), and thus, its choice of Delaware as a forum is entitled to the full deference due plaintiffs.

The Defendants argue that Cruise Control is "nothing more than a recently-formed shell company for enforcing patents" and that "a court should not give deference to a selected forum when a plaintiff's presence in the forum is simply a litigation tactic." (*See, e.g.*, D.I. 16 at 10 in 12-1755.) While it may be the case that Cruise Control is a non-practicing entity, there is little basis in the law for the Defendants' argument that such plaintiffs' forum choices should not receive due consideration and the cases the Defendants cite are inapposite or merely persuasive. Thus, the court declines to strip the plaintiff's forum choice of the deference due merely because the plaintiff may have been formed primarily to enforce patent rights. *See, e.g., Cradle IP, LLC v. Tex. Instruments, Inc.*, 923 F. Supp. 2d 696, 699 (D. Del. 2013) (according the plaintiff's forum choice full deference, despite the defendant's argument that the plaintiff was "simply a litigation vehicle", and ruling that "[t]he court declines to treat such non-practicing entities as anything less than holders of constitutionally protected property rights...."); *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 373 (D. Del. 2012) ("Despite the defendants' implication that plaintiffs at bar, patent enforcement companies, should be treated as second-class citizens, the court declines to disregard the privilege of choosing a venue that has historically been accorded plaintiffs, absent

7

specific authority making such a distinction."). Consequently, although the Defendants' choice of the Eastern District appears to be a legitimate venue, Cruise Control's forum choice controls. The court concludes that this factor counsels against transfer.

### 2. Where the Claims Arose

Regarding where the claim arose, while patent infringement claims arise wherever someone has committed acts of infringement, *see, e.g., Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012), "infringement claims have even deeper roots in the forum where the accused products were developed." *Linex Technologies, Inc. v. Hewlett-Packard Co.*, No. 11-400-GMS, 2013 WL 105323, at *4 (D. Del. Jan. 7, 2013); *see also Smart Audio Techs.*, 910 F. Supp. 2d at 730; *Wacoh Co. v. Kionix, Inc.*, 845 F. Supp. 2d 597, 602 (D. Del. 2012). The Defendants' arguments in favor of the claim having arose in the Eastern District of Michigan are convincing. First, as the Defendants point out, all of the Defendants are either headquartered in the Eastern District of Michigan and/or operate their research and development facilities there. (D.I. 16 in 12-1755 at 3; D.I. 1 in 12-1761 at ¶ 4; D.I. 16 at Ex. 3 & 4 in 12-1758; D.I. 14 at 2 in 13-0085; D.I. 14 at 2 in 13-0086; D.I. 20 at 2-3 and D.I. 22 at 3 in 13-0087.) Second, the Defendants all argue in various ways, (*see, e.g.,* D.I. 16 at 12 in 12-1755), and Cruise Control does not contest, (*see, e.g.,* D.I. 18 at 10-11 in 12-1755), that their accused products and services were designed and developed in the Eastern District of Michigan. Third, the Defendants allege, (*see, e.g.,* D.I. 16 at 12-13 in 12-1755), and Cruise Control again does not deny, (*see, e.g.,* D.I. 18 at 10-11 in 12-1755), that no design or development related to the accused products occurred in Delaware.

Cruise Control's primary argument in support of its stance that the claims at issue arose in

Delaware is that the Defendants all import and export automobiles through the Port of Wilmington or at least sell cars in Delaware. *(See, e.g.*, D.I. 18 at 10-11.) Cruise Control's arguments are unavailing, however. As Cruise Control itself acknowledges, the Defendants use many ports and sell in many jurisdictions. *(See, e.g., id.)*, Thus, this is not a basis to find that the claims at issue have a particularly noteworthy connection to Delaware, rather than any of the many other jurisdictions. Indeed, the crucial inquiry in determining the deeper roots of infringement claims is where the design and development of the accused products occurred. *Linex*, 2013 WL 105323 at *4; *Smart Audio Techs.*, 910 F. Supp. 2d at 730; *Wacoh*, 845 F. Supp. 2d at 602. Because it is undisputed that the Eastern District of Michigan is this location for all of the Defendants, the court concludes that the claims in the instant matter arose in the Eastern District of Michigan. This strongly weighs in favor of transfer from Delaware.

### 3. The Parties' Convenience

In determining which jurisdiction is most convenient for the parties, the court considers: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Smart Audio*, 910 F. Supp. 2d at 731 (citation omitted). As far as physical location is concerned, none of the Defendants have their headquarters in Delaware. (D.I. 16 in 12-1755 at 3; D.I. 1 in 12-1761 at ¶ 4; D.I. 16 at Ex. 3 & 4 in 12-1758; D.I. 14 at 2 in 13-0085; D.I. 14 at 2 in 13-0086; D.I. 20 at 2-3 and D.I. 22 at 3 in 13-0087.) In contrast to the Defendants, Cruise Control has provided no information at all regarding its own physical location. *(See, e.g.*, D.I. 1 and D.I. 18 in 12-1755.) It does not deny the Defendants' allegations that it is a non-practicing entity with

no offices or factories, however. (*See, e.g.*, D.I. 16 at 6; D.I. 18 at 3-4, 11-13.) Regarding the costs to the parties' employees in traveling to Delaware, the Defendants allege, (*see, e.g.*, D.I.16 at 14-16 in 12-1755), and Cruise Control does not dispute, (*see, e.g.*, D.I. 18 at 11-13 in 12-1755), that all of their employees involved in the research and design of the accused products or who otherwise possess knowledge relevant to the instant litigation are located in the Eastern District of Michigan. Consistent with its general vagueness regarding its own operations, Cruise Control alleges that "some of Cruise Control Tech's witnesses and counsel are on the east coast or in Delaware", but details no facts at all regarding these witnesses' roles or capacities that would permit the court to evaluate their relevance and importance. (*See, e.g.*, D.I. 18 at 13 in 12-1755.) The convenience factor that most favors Cruise Control is the relative finances of the parties. Cruise Control makes much of the Defendants' greater financial ability to bear any costs related to travel, [citation], and the Defendants resources can reasonably be deemed vast considering the national and international scope of their operations. The fact that the Defendants possess vast resources, however, does not mean that the court should follow an approach that would unnecessarily waste these resources.

Ultimately, while the court does not seek to give short shrift to the inconvenience to Cruise Control of being compelled to litigate outside the forum it has chosen, the court must "account for the absolute costs likely to flow from its transfer decision." *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, No. 11-1050-GMS, 2013 WL 828220, *5 (D. Del. Mar. 6, 2013). The locations of the Defendants and their employees suggest that allowing this litigation to proceed in the Eastern District of Michigan would cabin costs. In the absence of concrete facts establishing that Delaware would be more convenient for Cruise Control and any of its material witnesses, the court concludes that the

convenience of the parties counsels in favor of transfer.

### 4. The Witnesses' Convenience

As far as the witnesses' convenience is concerned, the available facts favor transfer. As discussed above, it is not disputed that the Defendants' employees who are capable of testifying regarding design and research of the accused products are located outside of this court's subpoena power in the Eastern District of Michigan. (*See, e.g.*, D.I. 16 at 15-16 in 12-1755.) The Defendants also contend that there are third party witnesses, such as suppliers, that are outside the Defendants' control and located in the Eastern District of Michigan. (*See, e.g., id.*; D.I. 14 in 13-0086.) Contrary to Cruise Control's arguments, the unavailability of witnesses in this jurisdiction combined with inconvenience to third party witnesses is sufficient to establish that the witnesses' convenience favors transfer. *See Linex Technologies*, 2013 WL 105323, at *5 ("It is enough that likely witnesses reside beyond the court's subpoena power and there is reason to believe those witnesses will refuse to testify absent a subpoena."); *Pragmatus AV, LLC v. Yahoo! Inc.*, No. 11-902-LPS-CJB, 2012 WL 4889438, at *10-11 (D. Del. Oct. 15, 2012) (finding inconvenience to third party witnesses weighed in favor of transfer).

### 5. The Location of Books and Records

The location of books and records factor is neutral since this factor is relevant only where the Defendants show that there are books and records that cannot be transported or transmitted to Delaware. *See ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 571 (D. Del. 2001); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 205 (D. Del. 1998). The Defendants have not made any such showing here.

### B. Public Interest Factors

11

Having considered the private interest factors, the court proceeds to the public interest factors. The court concludes that practical considerations and the administrative difficulty of the two fora further indicate that this litigation should be transferred to the Eastern District of Michigan.[2]

### 1. Practical Considerations

Regarding the practical considerations, as discussed above, the accused products were developed and designed at the Defendants' premises in the Eastern District of Michigan. Consequently, this action has significant connections to that jurisdiction. Cruise Control argues that Delaware has an interest in this matter because some of the Defendants are incorporated there. (D.I. 18 at 17-18 in 12-1755.) Cruise Control downplays, however, the fact that some of the Defendants are not incorporated in Delaware. In addition, even regarding those Defendants who are incorporated in Delaware, the Eastern District of Michigan still has a stronger interest to this litigation because it is where the claims arose and where the employees and known material witnesses are located. *See, e.g.*, *McRo, Inc. v. Activision Blizzard, Inc.*, Civil Action No. 12-1508-LPS-CJB, 2013 U.S. Dist. LEXIS 178823, at *50 (D. Del. Dec. 13, 2013) (Concluding that Delaware's ordinarily strong interest in a dispute between Delaware corporations was counterbalanced by the parties' headquarters being located elsewhere.); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.")

---

[2] The remaining public interest factors are neutral or not relevant.

The fact that all, except one, of the other Defendants are seeking transfer also weighs in favor of transferring the instant actions to the Eastern District of Michigan. There are 13 related actions currently pending before this court in the instant litigation.[3] (*See* 12-1755; 12-1756; 12-1757; 12-1758; 12-1759; 12-1760; 12-1761; 12-1762; 13-0082; 13-0084; 13-0085; 13-0086; 13-0087.) In nine of the cases, the Defendants are seeking transfer to the Eastern District of Michigan. In three of the cases, the Defendants have filed statements indicating they consent to their cases being transferred to the Eastern District of Michigan. (*See* D.I. 14 in 12-1759; D.I. 18 in 12-1760; D.I. 16 in 13-0084.) The only defendant that has yet to file a motion to transfer or a statement of non-opposition does not oppose transfer and has instead merely been silent. (13-0082.) With 12 of 13 defendants seeking or consenting to transfer, and one defendant being silent on the matter, Cruise Control's assertion that granting the motions to transfer will result in piecemeal or duplicative litigation is dubious at best. In fact, the efficiency and ease of litigation that Cruise Control claims weigh in favor of keeping all of the cases in Delaware are equally served by transferring all of the cases to the Eastern District of Michigan.

### 2. Administrative Difficulty of the Two Fora

As some of the Defendants point out, Delaware courts' dockets are far more congested on average than those of courts in the Eastern District of Michigan. (*See, e.g.*, D.I. 14 at 3 in 12-1758 (Observing that "Delaware had a total of 809 new patent cases filed in the year ending September 2012 (four District Judges) whereas Michigan had 55 (twenty-two District Judges).") Furthermore, the median time required to resolve a civil case from filing of the complaint to

---

[3] Apart from these nine cases that are currently pending, litigation in two other related cases has ceased due to voluntary dismissal by Cruise Control. (*See* D.I. 12 in 12-1753; D.I. 19 in 12-1754.)

completion of the jury trial that Cruise Control has requested in the instant case was 34.5 months in Delaware in 2012, compared to 28.0 months in the Eastern District of Michigan. (*Id.* at 2-3.) In addition, Delaware is one of the busiest patent jurisdictions in the nation. All of these facts weigh in favor of transfer.

## V.   CONCLUSION

Considering the *Jumara* factors as a whole, the court believes that the Defendants have met their burden of demonstrating that the interests of justice and convenience strongly favor transfer. Thus, the court will grant the Defendants' Motions to Transfer to the Eastern District of Michigan Pursuant to 28 U.S.C. § 1404(A).

Dated: March 31, 2014

_____
CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRUISE CONTROL TECHNOLOGIES LLC,<br><br>Plaintiff,<br>v.<br><br>CHRYSLER GROUP LLC,<br><br>Defendant. | Civil Action No. 12-1755-GMS |
| CRUISE CONTROL TECHNOLOGIES LLC,<br><br>Plaintiff,<br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Civil Action No. 12-1756-GMS |
| CRUISE CONTROL TECHNOLOGIES LLC,<br><br>Plaintiff,<br>v.<br><br>GENERAL MOTORS LLC,<br><br>Defendant. | Civil Action No. 12-1757-GMS |
| CRUISE CONTROL TECHNOLOGIES LLC,<br><br>Plaintiff,<br>v.<br><br>JAGUAR LAND ROVER NORTH AMERICA LLC,<br><br>Defendant. | Civil Action No. 12-1758-GMS |

| | |
|---|---|
| CRUISE CONTROL TECHNOLOGIES LLC, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>SUBARU OF AMERICA, INC., )<br>)<br>Defendant. )<br>_____) | Civil Action No. 12-1761-GMS |
| CRUISE CONTROL TECHNOLOGIES LLC, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>VOLVO CARS OF NORTH AMERICA, INC., )<br>)<br>Defendant. )<br>_____) | Civil Action No. 12-1762-GMS |
| CRUISE CONTROL TECHNOLOGIES LLC, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>NISSAN NORTH AMERICA, INC., )<br>)<br>Defendant. )<br>_____) | Civil Action No. 13-0085-GMS |
| CRUISE CONTROL TECHNOLOGIES LLC, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>TOYOTA MOTOR NORTH AMERICA, INC., )<br>)<br>Defendant. )<br>_____) | Civil Action No. 13-0086-GMS |
| CRUISE CONTROL TECHNOLOGIES LLC, )<br>) | |

|                                      |   |                                   |
|--------------------------------------|---|-----------------------------------|
| Plaintiff,                           | ) |                                   |
| v.                                   | ) | Civil Action No. 13-0087-GMS      |
|                                      | ) |                                   |
| VOLKSWAGEN GROUP OF AMERICA, INC.,   | ) |                                   |
|                                      | ) |                                   |
| Defendant.                           | ) |                                   |
|                                      | ) |                                   |

## ORDER

At Wilmington, this 31st day of March, 2014, consistent with the Memorandum issued this same date, IT IS HEREBY ORDERED THAT:

1. The Defendants' Defendants' Motions to Transfer to the Eastern District of Michigan Pursuant to 28 U.S.C. § 1404(A) (D.I. 15 in 12-1755; D.I. 15 in 12-1756; D.I. 18 in 12-1757; D.I. 14 in 12-1758; D.I. 17 in 12-1761; D.I. 14 in 12-1762; D.I. 14 in 13-0085; D.I. 14 in 13-0086; D.I. 19 in 13-0087) are GRANTED; and

2. Civil Action Nos. 12-1755-GMS; 12-1756-GMS; 12-1757-GMS; 12-1758-GMS; 12-1759-GMS; 12-1760-GMS; 12-1761-GMS; 12-1762-GMS; 13-0082-GMS; 13-0084-GMS; 13-0085-GMS; 13-0086-GMS; 13-0087-GMS are transferred to the U.S. District Court for the Eastern District of Michigan.

_____
CHIEF, UNITED STATES DISTRICT JUDGE